Case No. 22-5746, United States of America v. Herbert Marsh, Oral Argument Not to Exceed, 15 minutes per side. Lauren Ross for the appellant. You may proceed. Good morning and may it please the Court. My name is Lauren Ross and I represent the appellant Mr. Herbert Marsh. I'd like to reserve four minutes for rebuttal. I'd like to begin with Mr. Marsh's argument. The officers violated his Fourth Amendment rights when they stopped his vehicle pursuant to a provision of the Tennessee Code that for everyone's convenience I'm going to refer to as 140-2. Now the question this Court asks when determining whether or not an officer's mistaken interpretation of the law is nonetheless objectively reasonable is whether or not the law at issue clearly permitted the conducted question. And here there can be no question that 140-2 clearly permitted the turn that Mr. Marsh's vehicle executed on that day. Doesn't that really just sort of prejudge the whole question that we're answering, whether it clearly permitted something? So, Your Honor, that's... For one part the courts have already described this as a confusing statute. So, Your Honor, the question that this Court asks is set forth in United States v. Stevenson is whether or not the law at issue clearly permits the conducted question. And if Your Honor, I believe you're quoting from the Tennessee Court's decision in Brighton. I guess what I'm saying is saying it's clear doesn't make it clear. So why is it so clear to you? So I think again, Your Honor, the question for this Court is one of essentially statutory construction, as this Court noted in United States v. Stevenson. And here if you look at the text of 140-2, I think it is quite clear, Your Honor. All that requires of an individual exiting the intersection after completing a left-hand turn is that they select a lane to the right of the center line. Language that clearly holds open the possibility of selecting the lane closest to or, as Mr. Marsh's vehicle did on that day, farthest from the center line. That reading, as Mr. Marsh noted in his briefs, further reinforced by more specific language in 140-2. Don't you think we have to interpret that in context? It just says to the right of the center line. Would that allow a car to drive in a bike lane or the shoulder of the road? No, Your Honor, because of course 140-2... It would be to the right of the center line. That's correct, Your Honor. But 140-2, of course, works in concert with all the other provisions of the Tennessee Traffic Code. And I think those would obviously bar a court from driving into a bike lane or onto the shoulder of the road. And I think here 140-2 is obviously speaking to selecting which of the lanes to the right of the center line. Could you... I mean, to play devil's advocate, even if you had those other ones, the response might be, well, the specific governs the general, and this is the specific on left-hand turn. So at least at the initial part of the turn, it says to the right, and that's enough. So I do think you're right. Your instinct is right. But I do suggest that that means we have to interpret right of the center lane in context. Now, I find your arguments about the other provisions and mentioning when they mention the lane closest to the center line quite compelling. But how ambiguous... I think the key question is, how ambiguous do you think it has to be under Hine? Like if you engage in an analysis that Kaiser calls for that exhausts all tools of statutory interpretation as their best answer, maybe you're right. But do you think that that is the required ambiguity that after all those tools are exhausted, it's still ambiguous in order to invoke Hine's reasonableness standard? Or do you think just the fact that you have to invoke the tools of interpretation shows that it's ambiguous? Because if it's that latter one, then I think your position might be in trouble on whether it's objectively reasonable to think a contrary view. Again, Your Honor, because the inquiry before the Court is fundamentally one of statutory construction, as this Court acknowledged United States v. Stevenson, as Justice Kagan noted in her concurrence in Hine, the Court doesn't have to bind its hands and not make use of any of the tools of statutory construction. Again, I think the question for this Court is whether or not the statute clearly permitted the conduct here. And so I take as an example, Your Honor, in Hine, for example, the Court began with an inquiry into the text of the If you look at this statute and how it relates to other provisions of the Code here, it's really quite unclear what's going on. Here we have precisely the opposite circumstance, Your Honor. The statute at issue here is clear when you look at the language of how to exit an intersection. And then other provisions of the Tennessee Code, 140-3, Your Honor, which discusses that precisely when an individual must select and exits a different type of intersection, only reinforce that Mr. Marsha's interpretation is correct here. Do we only look at the statute itself when making this determination, or does it matter what the Tennessee Supreme Court and, on your side, the Tennessee AG have said about the statute? So in other words, if you're a reasonable officer, are you supposed to just read the statute or also take the surrounding legal context? No, Your Honor. You can look to the surrounding legal context here. Again, in United States v. Stevenson, the court did acknowledge that fact. In the first instance, this court would look to decisions by the relevant court that can offer definitive interpretation of the statute. So here are the Tennessee courts that had kind of discussed the statute prior to the stop in question. So then what do you make of the Wright case? Because that has some dictum that's not helpful for your client. So I disagree, Your Honor. I think that Wright ultimately was facing a very different situation than the one before this court. It was discussing where kind of within an intersection, as one is completing a turn, a vehicle must be located. So in that case, obviously, the individual made a very shallow 45-degree turn as opposed to moving closer to the center of the intersection. It has nothing to say whatsoever about the question before this court, which is the lane an individual must select after completing that turn when exiting the intersection. And again, I realize I quoted quite a bit. In United States v. Stevenson, the court noted that there might be cases that interpret a particular provision, but they don't speak to the particular question before this court. This court will set them to the side as not being informative of its interpretation. Well, but, I mean, Wright says that the statute, as mandated by statute, Anderson, in that case, failed to execute a 90-degree turn. Instead, he exited, he made a 45-degree turn. I don't know how you exit a 90-degree, how you make a 90-degree turn without turning into the closest lane. You're not allowed to make a 135-degree turn on this dictum anyway. So I think, Your Honor, or the holding, actually, in that case. So Your Honor, I think that that's putting a bit more weight on Wright than Wright can bear in this particular case. I think there, all the court was determining, and the only question really before the court was where within the intersection an individual's vehicle must be located while it completes a turn and kind of squares up into the turn. It doesn't speak about which lane an individual vehicle must select. And again, I look here now to the Tennessee Attorney General's opinion, which was rendered 20 years after the decision in Wright, and which makes no mention whatsoever of Wright, which I think confirms Mr. Marsh's view that Wright is just simply not relevant to the question before this court. Let's go back to the statute a second. One or the other of you has divided the statute up into three component parts. And I want to ask you about what's identified as that third component part. It's the language that says, whenever practicable, the left turn shall be made in that portion of the intersection to the left of the center of the intersection. And I may be confusing which one of you said this in your briefs, but basically you said that only deals with leaving the intersection itself. It doesn't even address the lane into which you turn. And I don't read it that way. So I'm wondering what's the source of the conclusion that that isn't dispositive here? So I think that's my fault, Your Honor. I think that's how we framed it. I'm so happy to address that. So the way that I read the statute here, Your Honor, is that the first section, as in all things in life, there's a beginning, a middle, and an end of a journey. The first sentence addresses the beginning and end. How does one enter an intersection? How does one exit an intersection? The second sentence addresses how one progresses through that intersection. Where the vehicle must be within the intersection. Must it be near the center line or farther from it? So I think, again, it does not really address the question before this Court, Your Honor, which is which lane... You didn't get to the third one. The way one of you are reading the third one, it seems to me it's the same. You're reading it to say the same thing as the first part, as opposed to it being a separate, distinct third requirement. And I'm just wondering why it wouldn't be reasonable for a police officer to read that third part to address where you end up once you've completed the turn. So again, Your Honor, I think that this portion of the statute is simply referring to where one must square up within the turn, how one must progress through the intersection, as opposed to how one must enter or exit the intersection. I understand that you can read it that way, and that to me would be a reasonable way to read it, but why is it unreasonable to read more into it than what you do to that third part of the statute? Candidly, Your Honor, I just don't see a textual hook for that reading at all, or any basis for deciding that that is the correct outcome here. And I think it's notable that I struggle with that, and as does the government. In their briefing, of course, they do not offer any justification based on the text of the statute itself for why the officer's interpretation that the stop that Mr. March executed was illegal under 140-2. What about other courts? So this seems to be some kind of a model statute. Other states have this statute. The Second Circuit seems to have interpreted this statute. Ohio has dueling Court of Appeals opinions on a very similar statute, one saying it's not ambiguous the other way, one saying it is ambiguous and tie goes to the runner or something. So what about that? If courts in other states have struggled to interpret the statute and have come to differing conclusions, is that evidence that a reasonable officer could come to a different conclusion, or should we not think about other states? I don't believe that they're relevant here. This Court can, of course, consider those decisions and interpreting whether or not 140-2 clearly permits the type of turn that Mr. March's vehicle executed here. The Court can look to those decisions and see if it finds their reasoning compelling and suggest that it creates ambiguity in the statute. This Court certainly does not defer to those other courts in determining whether or not the statute here is ambiguous or not. And of course, this Court has noted that it does not think it is appropriate to find that an officer's mistake of law is reasonable where the statute at issue is unambiguous. So just to follow up on that, can you, so you cite a lot of the out-of-state cases or out-of-jurisdiction cases. I couldn't find a single one. I found several, and you cite several, that support your interpretation, meaning they authoritatively interpret it to allow for exit into any lane. But I could not find a single one that said the opposite interpretation was unreasonable. So all the Ohio cases all don't exclude the evidence because they say even if this is the unambiguous reading, there's other cases in our district that read it otherwise, so it was a reasonable interpretation. And that's the key question here. The key question isn't what is the right interpretation. The key question is whether the opposing interpretation is reasonable. And can you think of any case? I think we'd be kind of making new ground here to say that the other interpretation is unreasonable. Did you cite any of those cases? Can you think of any? So I did not cite of any case. I'm not aware of any case, Your Honor, in which a court has said that an officer's interpretation was unreasonable in the situation. But I don't think that that controls the outcome here, Your Honor, because of course this court has its own inquiry, grounded in statutory construction, of whether or not an officer's mistake of law was objectively reasonable. It has its own test to set forth in the United States v. Stevenson, and it certainly should not defer to the decisions of other courts who are using different case law in determining the scope of Hines v. North Carolina. I see I'm at the end of my time. I'm happy to address any other questions, particularly on other arguments that Mr. Marsh raised, but want to ensure that that is okay with the court. Any questions? Thank you. Okay. Thank you very much. Your Honor, may it please the Court, Rasko Dean on behalf of the United States. I'd like to begin with a question that Judge Larson posed to opposing counsel regarding whether this court could consider decisions in other states and other state statutes, whether that's the Ohio statute that Ohio appellate courts have construed, a New York statute that New York appellate courts in the Second Circuit have construed. And admittedly, there's not a lot of case law in the context of a reasonable mistake of law in terms of looking at analogous state statutes. But if this court looks to the Tenth Circuit's decision in United States v. Nicholson where then Judge Gorsuch issued a dissent, he certainly referenced other states' laws for a very similar traffic provision. And of course, in all sorts of other contexts, when there's questions of state law, particularly Erie, this court will in an interpretive vacuum in the state of question, will sometimes look to other states' laws. So the government certainly thinks it would be... What do you make... So he said that he posed some questions. He didn't say necessarily that the mistake was reasonable. He said he would remand. So this is pre-Hein. So he forecasted Hein. But some of the questions he posed, how many officers in the jurisdiction share this view? Do the populace in the jurisdiction in New Mexico share this view? Those questions weren't necessarily answered here. Do you think they matter after Hein? Or do you think Hein made it a purely legal inquiry? Your Honor, I believe he referred to those difficult questions. And government's perspective is that Hein made it purely a legal inquiry. That it is purely an objective inquiry. So do you think... So if it is a purely legal inquiry, what is your best... I struggle to see what the interpretation is under which it's illegal to use the far lane. What provision of this provision of the statute do you think is ambiguous and could allow for that interpretation, allow for the officer's interpretation? Yes, Your Honor. Thank you. I think the strongest argument that this interpretation is reasonable is the third sentence. Whatever practicable, the left turn shall be made in the portion of the intersection to the left of the center of the intersection. And admittedly, that provision does not state explicitly that the turn has to be made into the far left-hand lane. But I think there's a very good argument that if you are making a turn to the left of the center of the intersection, and as the Tennessee Supreme Court has said, among other things, you've got to square your turn, it seems almost impossible to be able to make that turn into the far right lane. Where are you getting you have to square your turn? Is that from right that says you have to make a 90 degree turn? Right saying that the turns need to be made as close to the center lines of the respective roadways as possible. Uh-huh. Okay. That's your only support for make it square. Right is the best support for making it square. Certainly, I think there is an Ohio Appellate Court decision that has since been overturned that looked at the second clause of the first sentence. After entering the intersection, the left shall be made so as to lead the intersection to the right of the center line of the roadway being entered. So there's a reasonable interpretation there, I think, under the Fourth Amendment. But the stronger one is the third sentence. I interpret the third sentence to just make clear that when there's cars on both sides turning left, you shouldn't have a real wide turn like going all the way around the intersection because if one car is going that way, there's two left turning. I don't necessarily see where that gets what lane you exit. It's just saying if I think of an intersection, I draw a diagonal. It's just saying stay to the left of wherever the center of the intersection is. You can leave the intersection in any lane after that, can't you? Well, to me, I think that certainly just says stay to the left of the center of the intersection. But when you stay to the left of the center of the intersection and you do as a Tennessee Supreme Court instruction, making it close to the yellow lines and you're not taking a diagonal path, it's going to put you in that far left-hand lane, which is what the officer testified to in the Second Circuit case, United States v. Henderson. When we're trying to think about why it would make a difference to the law, whether you turn into the left side or you turn into the right side lane, nobody's talked about cars that are coming straight ahead towards you. And if there is a car across the intersection coming in the opposite direction that you're going, and that car is turning right, they're going to turn, presumably, into the right-hand lane. They're not going to swing over and turn into the left-hand lane. Just like if you're turning left, you wouldn't be swinging over and into the lane to which cars turning right going the other way are turning. I got a lot of turns there. Did that make sense? Yes, Your Honor, and the government certainly agrees with that interpretation, and all this is unfolding against the backdrop of certainly that common practice among drivers. And then the Tennessee Driver's License Manual, which is obviously not authoritative on state law, but if you look at the Tennessee Attorney General's opinion interpreting this law, it says in its analysis that the driver's license manual, driver's tips on how to turn left, is not inconsistent with the state law, which further makes a mistake here if there was one, and I think the government's all but conceded that, a reasonable one under the Fourth Amendment. What do you think the standard, the standard might matter here on what is a reasonable mistake. If the standard is essentially the standard for the rule of lenity, or something approaching that, that the statute has to be an equi-employees after you've exhausted all the traditional tools of interpretation, that seems to be maybe what Justice Kagan was saying in her concurrence in Hine. I think that might pose a much more difficult burden for you than a standard of just reading a quick skim of the statute does it seem hard to follow. Does the government have an official position on kind of post-Hine what the standard should be? Yes, Your Honor, the standard post-Hine should be, as this court said in Stevenson, that the statute must clearly permit the conduct at issue, which from the government's perspective is a lower standard than Justice Kagan's to Justice Concurrent's regarding ambiguity. Now it's also, is that getting close, but the court, the majority also said it's a higher standard than qualified immunity, and that sounds like the qualified immunity standard. It does seem established, clearly permit, I mean there's an adverb, they say adverb in both of them. Yes, Your Honor, and certainly the majority did say that, and it should be a higher standard than clearly established law, but clearly permit can be read that way, and in this case there are multiple reasonable interpretations of this statute, and of course the touchstone of the Fourth Amendment is reasonableness. Can I ask you a question, I mean we can come back to this, but can I ask you a question about sentencing? Yes, Your Honor. So, I'm concerned about the base offense level calculation here, so did the district court, the district court said I'm going to rely on the jury finding, the jury finding that the defendant possessed the Springfield XD, but of course there were five firearms charged in the indictment, only the Springfield XD would count, because it's the only one that's capable of supporting this kind of magazine, so, I mean, isn't that plain error? Your Honor, I don't think it's... Did he make any other kind of factual findings? Your Honor, he did not make any other factual findings that I can recall, but a couple points. The firearms, there were five firearms found in the vehicle. I think under this court's decision in Sims, the firearms are co-located, so there's really not much of a specter of the jury not convicting on the Springfield XD. Because all the guns were together at the same place, and that's the only evidence... The jury, to find that he possessed, would have had to find that he possessed them in the same place that all the others were found? Is that what you're saying? Sorry, Your Honor, no, not necessarily. Okay. There were two dates at issue in the indictment, June 26th and June 27th. On June 27th, the Springfield XD is found co-located with four other firearms in the same vehicle. So, in other words, they're all in a heap in this vehicle? They're in different locations, but they are in one vehicle. They're all in one vehicle, and he's in the vehicle, and he has access to the vehicle? Yes, Your Honor. Okay. But, when you look at the broader record, the trial record, there is testimony from a cooperating defendant that the day before, prior to the robbery, the defendant gave this cooperating defendant the Springfield XD, transferred it to him, and directed him to use it in the robbery. And this court can affirm, for any reason in the record, and I'd submit that that is by preponderance standard, enough to find that he possessed the Springfield XD the day before. Can't you also make a good argument that had there been an objection made, and there wasn't, which is what obviously triggers plain error, that at that point the judge would have had the opportunity to state any other reasons why he attributed this particular gun to the defendant. And that reason, presumably, would have been because there's testimony in the record to support it. Absolutely, Your Honor. No, he just didn't get to that. So, just as a for instance, if we were to remand for that purpose, it seems like the outcome is pretty clear based on the trial record. Absolutely. The government certainly agrees the trial record establishes this by preponderance. So the argument on plain error has to be that somehow he failed to articulate the additional reason for that sentencing decision that he made, and the reason was there was no objection made. Yes, because the record plainly supported an alternative grounds of getting to that base offense level of 20. And so, I guess the question then becomes, can we make that finding ourselves? Can we say there's no error because had the district court been asked to make a ruling on this, he clearly would have concluded that this different reason for finding possession existed. The government certainly thinks the court can. It is that that would be a base offense level that is certainly supported by the trial record in this case. But you don't have a case that says we can make that finding rather than remand. I believe I cited a Seventh Circuit case in a footnote for that. I can certainly update the court with a Sixth Circuit case in a 28-J letter, if it's helpful to the court. Yeah, I think that would be helpful. Thank you, Your Honor. I would like to briefly touch on... Before you do, can I ask, just going back to the first issue, I had a question kind of about an unbriefed issue, which is, do you think that the good faith exception to the exclusionary rule still applies post-Hein? The reason I say that is the court seems to be moving the good faith exception to apply to negligent conduct. So the exclusionary rule should only apply to an intentional or reckless disregard of the law. So Hein was interpreting the Fourth Amendment. It wasn't doing the exclusionary rule. So there still might be room for the good faith exception to apply, meaning as long as the officer's interpretation, even if it was negligent, so unreasonable, as long as it wasn't reckless or an intentional disregard of the law, that would be sufficient, even if there was a Fourth Amendment violation, to avoid the exclusionary rule. You didn't brief this, and I'm curious if I'm missing something about why it wouldn't potentially be an applicable argument. Your Honor, thank you. I think it is potentially an applicable argument. As you said, Hein only addressed the antecedent question of whether there was in fact a Fourth Amendment violation. I think from my understanding of the case law, there is some tension, perhaps, between an officer's interpretation, mistaken interpretation, being unreasonable, and then the good faith exception. Unreasonable as in negligence. As in negligence. So Utah v. Strieff says the officer is negligent but wasn't reckless. It just seems to me this could have been a lot easier of a case if you had argued the good faith exception rather than just argued no Fourth Amendment violation. Do you know of any case law interpreting the interaction of the good faith exception with Hein post-Hein? I don't, Your Honor. I apologize. I would say that if this case were to be remanded for further proceedings, the government would certainly be interested in making a good faith argument back in district court. Thanks. And briefly, I'd just like to add for the court that if the court is not convinced that probable cause here supported the stop, the government's also raised a reasonable suspicion argument. The government believes that that argument was preserved below, although it was not briefed, and that while a close question, reasonable suspicion does support the stop here. Can I just ask a question? Does the good faith exception apply in a Terry stop context? At least one... I thought the good faith exception was in a... Yeah, just answer the question. Thanks. Yes, Your Honor. Typically, as I understand it, the good faith exception is going to apply related to warranted searches. I know in at least one case, United States v. Fugate, this court has applied the good faith exception to a Terry stop before. That's an unpublished case from around 2014. Do other circuits do that as well, or is this just... I believe the third circuit in Ambach opinion has applied the good faith exception to a warrantless search. I can't say the specific type. Okay. That's interesting. Thank you. Thank you. Thank you, Your Honor. Just a few quick responses, Your Honor. So first, Judge Murphy, you asked about the relevant standard. What level of ambiguity should we care about in this case? I think here in United States v. Stevenson, this court was not articulating a higher standard than the one set forth by Justice Kagan and her concurrence in Hine. In fact, United States v. Stevenson, this court cited to Justice Kagan's concurrence in Hine as the basis for its articulation of this standard. So I do not think it was attempting to create a higher bar for defendants in this case. As for the role of case law in determining whether or not an officer's mistake of law was objectively reasonable, I think it's uncontroversial in this court and in other courts that statutes that are not ambiguous are not susceptible to an officer's objectively reasonable interpretation of law. So if this court were to determine... But wait. If the Tennessee Supreme Court had construed the statute in a relevant case, you surely agree that would count. Absolutely. Even if they got it wrong. Like, even if we would say, oh, come on, this statute is plain as day, and they said, no, it means something else, we would have to defer to that, right? That's an important clarification, Your Honor. I agree. If a Tennessee court which has the ability to definitively interpret the statute has interpreted it in a way that renders the officer's interpretation more reasonable, I think that would control here. To the extent that there are other courts who have interpreted parallel provisions that are similar to 140-2, though, this court doesn't need to poll the room to determine whether or not 140-2 is ambiguous or not. It has the ability, of course, in the first instance to interpret the statute itself and determine for itself whether or not the statute clearly permits the conduct in question. As for, I believe, Judge Larson, you asked a question about the sentencing of Mr. Marsh, the calculation of the base offense level. I think the notion that these guns were all co-located does not resolve the question before this court. And that's because it's very clear that the semi-automatic firearm that was recovered from Mr. Marsh's vehicle is very differently situated than the other firearms that were found there. That's because that firearm was used by Mr. Horton in the robbery of Music City Pond Number 3. And the only charge that related Mr. Marsh specifically to that firearm, a charge under 924C, is acquitted of by the jury. And in order to be acquitted of that conduct, the jury needed to find, and I'm quoting here, that Mr. Marsh did not help encourage or have advanced knowledge of the fact that Mr. Horton intended to use or carry that firearm. So again, the jury clearly found that Mr. Marsh did not have any relationship with that  firearm. But how does that square with the testimony of the co-defendant, assuming that it was to be believed that he got the gun from the defendant? I think it makes it quite clear that the jury did not believe Mr. Marsh's defendant. And regardless, I think in... What makes it so clear that the jury didn't believe that part of the testimony? So the jury may have believed that he received the weapon from Mr. Marsh, but that doesn't establish that Mr. Marsh constructively possessed or actually possessed the firearm in question to this court's decision in the United States v. Beverly. Why does the proof not show that he constructively possessed it at least the day before the robbery? If you believe the testimony that that's where the guy, the co-conspirator, got the gun. Merely passing a firearm to Mr. Horton, who then used that firearm during the robbery, does not establish the fact that Mr. Marsh actually or constructively possessed the firearm. How can you not constructively possess a gun that you give to somebody else? Because it's not clear, it's not evident from the record that Mr. Marsh actually possessed that weapon and then kind of gave a weapon that he owned to Mr. Horton. Instead, he merely passed it from one location to another. Again, Your Honor, I don't think that's enough to establish constructive possession. And if this court has any questions as to whether or not it's appropriate to find that Mr. Marsh actually possessed the firearm, again, I think that this is a question that's best suited for the district court and we request that the court remand for further fact-finding on this issue. And as my final point here on the exclusionary rule, I am unfortunately not prepared to discuss that in depth at this argument, Your Honor. I'm happy to brief it further if that would be useful to the court. I know only that this issue has been squarely forfeited, Your Honor, under United States v. Archibald. If there are no further questions. Thank you. Any further questions? No. All right. Well, I know that you were appointed pursuant to the Criminal Justice Act and the court wants to thank you for discharging your duties, which you have done very ably on behalf of your client. So, the court thanks you for your service. Thank you.